**FILED**

OCT - 1 2007

~~NANCY~~ MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | |
| | ) | Case: 1:07-mc-00387 |
| **FARZAD DARUI,** | ) | Assigned To : Lamberth, Royce C. |
| | ) | Assign. Date : 10/1/2007 |
| **Defendant.** | ) | Description: Miscellaneous |
| | ) | |

**MOTION OF ABDULLAH M. KHOUJ TO QUASH,**
**OR IN THE ALTERNATIVE TO MODIFY,**
**THE SUBPEONA SERVED BY DEFENDANT FARZAD DARUI**

Dr. Abdullah M. Khouj, through undersigned counsel, respectfully moves this Court to

quash the Criminal Rule 17(c) subpoena served on Dr. Khouj on September 20, 2007 by

defendant Farzad Darui. The subpoena is fatally deficient under Rule 17(c) of the Federal Rules

of Criminal Procedure because it is not specific in its requests, and it seeks documents that are

irrelevant to the instant case and that are inadmissible at trial. Moreover, the subpoena grossly

infringes on the personal privacy of Dr. Khouj and others in a manner that is unreasonable and

oppressive.

The grounds for this motion are fully set forth in the accompanying Memorandum of

Law.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*
Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, a true copy of the foregoing was served by First

Class Mail on the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C. 20530


Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing
diGENOVA &  TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA  20176

      Counsel for Defendant


                      *Robert P. Watkins*
                      Robert P. Watkins

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Misc. No _____ (RCL) |
| | ) |
| **FARZAD DARUI,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF THE MOTION OF ABDULLAH M. KHOUJ TO QUASH THE**
**SUBPEONA SERVED BY DEFENDANT FARZAD DARUI**

**BACKGROUND**

On June 8, 2007, Farzad Darui ("Darui" or "defendant") was charged in a seven-count

indictment with a scheme to defraud his former employer, The Islamic Center of Washington,

D.C. ("the Center"), and to obtain money and property belonging to the Center by means of false

and fraudulent pretenses, representations, and promises. The indictment is attached hereto at

Exhibit A.

The charges against Darui arise from his employment as the Business Manager of the

Center from 1994 until his firing in August 2006. The indictment charges Darui with writing

and issuing checks, causing checks to be written, signed, and issued, or falsely altering checks

drawn on the Center's various bank accounts or belonging to the Center.

The instant matter arises from the Federal Rule of Criminal Procedure 17(c) subpoena

served on the Director of the Islamic Center, Dr. Abdullah M. Khouj, by the defendant. The

subpoena is attached hereto at Exhibit B.

This Court granted the motion to permit defendant to issue Rule 17(c) subpoenas to

certain specified individuals and entities, including Dr. Khouj, on August 8, 2007. The motion

was unopposed by the United States Attorney's Office. Dr. Khouj, a non-party to the criminal

case, had no notice of defendant's Rule 17(c) motion, and did not participate in any proceedings

leading to the Court's grant of the Order. This Court specified a return date of September 12,

2007, but Dr. Khouj was not served with the subpoena until late in the afternoon of Thursday,

September 20, 2007.

The subpoena demands that Dr. Khouj produce a disturbing array of private material,

including, *inter alia*, "all marriage certificates . . . and divorce certificates" to which Dr. Khouj

was a party over a 21.5-year period (Subpoena Req. No. 2); "all [of Dr. Khouj's] IRS filings

and/or returns" for a 7-year period (Subpoena Req. No. 8); "all charitable contributions" by Dr.

Khouj over a 7-year period (Subpoena Req. No. 9); and "all personal bank statements for [Dr.

Khouj's] checking, savings, and investment accounts" held during a 7-year period (Subpoena

Req. No. 10). The defendant cannot demonstrate that the broad categories of material he

demands comport with the requirements of Rule 17(c); and, therefore, the subpoena should be

quashed.

## ARGUMENT

Rule 17(c) allows a criminal defendant to subpoena "books, papers, documents . . . or

other objects . . . designate[d] [therein]" for use at trial as long as compliance would not be

"unreasonable or oppressive." Fed. R. Crim. P. 17(c)(1), (2). This Court's authority to quash or

modify an "unreasonable or oppressive" subpoena ensures that "[e]very [Rule 17(c)] subpoena

[is] a 'good faith effort . . . to obtain evidence.'" *United States v. Arditti*, 955 F.2d 331, 345 (5th

Cir. 1992) (*quoting Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-20 (1951)).

As the Supreme Court emphasized in *United States v. Nixon*, 418 U.S. 683 (1974), Rule

17(c) "was not intended to provide a means of discovery for criminal cases." *Id.* at 698 (*citing

Bowman*, 341 U.S. at 220); *see also United States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C.

2006). Unlike the civil rules of discovery, Rule 17(c) simply expedites trial by allowing the

defendant to inspect material that may be admitted at trial. *Nixon*, 418 U.S. at 698; *see also*

*United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976).

To safeguard the limited role of the Rule 17(c) subpoena in criminal cases, the Supreme

Court has held that a defendant seeking to enforce a Rule 17(c) subpoena "must clear three

hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 481 U.S. at 700; *see also*

*Haldeman*, 559 F.2d at 75; *Libby*, 432 F. Supp. 2d at 29-32. "A subpoena that fails to satisfy

these three requirements will be deemed unreasonable or oppressive and must be either quashed

or modified." *Libby*, 432 F. Supp. 2d at 31; *see, e.g., United States v. North*, 708 F. Supp. 402,

404 (D.D.C. 1989).

Given that the defendant's service of the subpoena was not within the time frame

permitted by the Court and that the defendant cannot clear any of the hurdles necessary to obtain

the broad range of materials sought in the subpoena, compliance with the subpoena would be

unreasonable or oppressive. Therefore, Dr. Khouj respectfully requests that the Court grant his

Motion to Quash.

## I.    THE SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS NOT SERVED WITHIN THE TIME FRAME CONTEMPLATED BY THIS COURT.

The defendant's subpoena should be quashed because it was served eight days after the

end of the time frame specified by this Court *for the return*. On August 8, 2007, the defendant

filed a motion for early-return subpoenas *duces tecum*. This Court granted the defendant's

motion and permitted the defendant to issue the subpoenas *duces tecum* to Dr. Khouj and others,

with *a return date* of September 12, 2007. Although the subpoena states that the items

demanded "must be returned to [defendant's attorney] no later than close of business,

Wednesday, September 12, 2007" (Subpoena 2), the defendant failed to serve the subpoena on

Dr. Khouj until late in the afternoon on September 20, 2007. Because the subpoena was not served within the time frame permitted in this Court's Order, the subpoena should be quashed.

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE BROAD CATEGORIES OF MATERIALS SOUGHT FAIL TO MEET THE SPECIFICITY REQUIREMENT.

The defendant's requests for broad categories of material from Dr. Khouj constitute an impermissible "fishing expedition." The specificity requirement preserves the distinction between Rule 17(c) and civil discovery by "ensur[ing] that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *Libby*, 432 F. Supp. 2d at 32 (quotations omitted). A defendant may not use the Rule 17(c) subpoena "to examine general categories of documents with the hope that they contain information that may be helpful to his defense." *Id.* at 35. Rather, a Rule 17(c) subpoena must provide requests specific enough to enable a court to form a basis "upon which it [could] draw a reasonable inference that there is a real likelihood that the [material] would contain relevant and admissible evidence." *Id.* at 34 (*citing Nixon*, 481 U.S. at 700).

This Court's recent decision in *United States v. Libby* enforced a Rule 17(c) subpoena requesting "a narrow subcategory of documents . . . which cover a discrete topic and typically limit the pertinent time frame," *id.* at 38, but quashed a Rule 17(c) subpoena requesting "general categories of documents." *Id.* at 35. If a defendant "cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Id.* at 31 (*quoting United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)).

The subpoena here wholly disregards the specificity requirement of Rule 17(c). The subpoena is crafted as a civil discovery demand rather than a Rule 17(c) subpoena: each of the

- 4 -

nineteen categories is a demand for "all" of each type of material; no category identifies a single

specific document. Only two of the categories involve Darui or his various companies

(Subpoena Req. Nos. 1, 19); the remaining seventeen categories demand a vast array of personal

information about Dr. Khouj and others, including:

> (1)    Dr. Khouj's marital and relationship history over a period of 21.5 years
>        (Subpoena Req. Nos. 2-7);

> (2)    detailed financial information about Dr. Khouj over a period ranging from 7 to
>        21.5 years (Subpoena Req. Nos. 8-12);

> (3)    Dr. Khouj's mailing addresses over a period of 21.5 years (Subpoena Req.
>        No. 13);

> (4)    correspondence and financial transactions between Dr. Khouj and the
>        Government of his home country, Saudi Arabia, over a period of 21.5 years
>        (Subpoena Req. Nos. 11, 16);

> (5)    Dr. Khouj's authorizations for financial transactions entered into by the Islamic
>        Center (Subpoena Req. No.18); and

> (6)    personal information (e.g., visa petitions, time cards, personnel records, IRS 1099
>        forms, W-4 forms, employment contracts, paycheck stubs) for some or all
>        employees and independent contractors employed by Dr. Khouj and the Islamic
>        Center over a period of 21.5 years (Subpoena Req. Nos. 14, 15, 17).

The breadth of the personal information demanded by the subpoena is irreconcilable with

*Nixon*'s specificity requirement. The defendant has neglected to "reasonably specify . . . the

information . . . believed to be contained in the documents sought," and he has failed to identify a

single document, discrete topic, or pertinent time frame. *Libby*, 432 F. Supp. 2d at 31.

Furthermore, the subpoena overreaches by requesting "a wide variety of [information] relating to

a multiplicity of individuals," *id.* at 39, including Dr. Khouj, Debbi Estrada, Rachida Zouhri,

Noufisa Zouhri, Dr. Khouj's wives, assistants, and personal employees, as well as every

employee or independent contractor employed by the Islamic Center over a 21.5-year period.

These requests cast an impermissibly wide net over a large number of persons, as to "many [of] whom it is unknown whether they will even be witnesses in [the] case." *Id.*

By so flagrantly flouting the specificity requirement, the defendant undermines the requirement's important function to "allow the recipient of the subpoena to interpose specific objections to individual documents on the ground of admissibility and/or relevancy." *United States v. Moore*, No. 92 CR 200, 1992 WL 266938, at *1 (E.D.N.Y. Sept. 29, 1992). Because the subpoena fails to meet the specificity requirement mandated by *Nixon*, it is unreasonable and oppressive, and, on those grounds, should be quashed.

## III.    THE MATERIALS SOUGHT ARE IRRELEVANT TO THE CHARGES IN THE INDICTMENT AND ARE INADMISSIBLE AT TRIAL.

The subpoena also fails the other two *Nixon* requirements—relevance and admissibility. Under *Nixon*, in order to require production before trial, the defendant must demonstrate that the subpoenaed materials constitute relevant and admissible evidence. Unlike the civil rules of discovery, in a criminal case "[t]he fact that [materials] are potentially relevant or may be admissible is not sufficient." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (*citing United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)). "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997).

Thus, the defendant must show that the subpoenaed materials are relevant and admissible with regard to the indictment or to a "viable defense." *United States v. Rezaq*, 156 F.R.D. 514, 529 (D.D.C. 1994) (Lamberth, J.), *vacated in part on other grounds*, 899 F. Supp. 697 (D.D.C.

1995) (Lamberth, J.).  A defendant's defense is not "viable" and cannot form a basis for a Rule

17(c) subpoena when the "defendant . . . produce[s] little to convince [the] court that [the]

defense is not created out of thin air." *Rezaq*, 156 F.R.D. at 522, 528.  In *Rezaq*, this Court

quashed subpoenas *duces tecum* on relevance grounds because the Court declined to "speculate

that [the defendant's] defense [was] grounded in reality" in the absence of evidence.  *Id.* at 522,

528.

Here, the defendant has not met, and cannot meet, his burden of showing that the

requested materials are relevant to the indictment or to a viable defense.  Moreover, compliance

with the subpoena would work a gross invasion of the privacy of Dr. Khouj, the Khouj family,

and the many past and present employees of Dr. Khouj and the Islamic Center.

Seventeen of the nineteen categories of documents demanded in the subpoena are entirely

irrelevant to the indictment, which charges that the defendant "did knowingly devise, participate

in and execute an artifice to defraud the Islamic Center of Washington, D.C. and to obtain money

and property belonging to the Islamic Center of Washington, D.C. by means of false and

fraudulent pretenses and promises." (Ex. A at 4).  Aside from the two requests that demand

materials related to Darui or his various companies (Subpoena Req. Nos. 11, 19),[1] the categories

focus mainly on obtaining familial and financial information about Dr. Khouj and the full

personnel files of the Islamic Center's employees.  Nothing in the indictment indicates that Dr.

Khouj, his personal employees, or any employees of the Islamic Center were part of the

defendant's alleged scheme or that the alleged scheme involved mishandling of employee

materials requested by the defendant (e.g., pay stubs, time cards, W-4 forms).  Thus, the

demands for these materials are irrelevant to the indictment and would be inadmissible at trial.

---

[1]     Although categories 1 and 19 may be relevant to the indictment, the vague demands for
"all" of the documents in these two categories fail to meet *Nixon*'s requirement of specificity.

- 7 -

The defendant has likewise failed to meet his burden of demonstrating the relevance of the requested documents to his defense. The volume of the defendant's requests for personal information regarding Dr. Khouj's marital status, his financial affairs, and his relationship with the Saudi Arabian Government suggests that the defendant views the requested materials as relevant to the defense set forth in his Motion to Dismiss the Indictment.[2] The defendant has failed to meet his burden of demonstrating the viability of that defense, however.

Here, as in *Rezaq*, there is no evidence demonstrating that his alleged defense is not "created out of thin air." *Rezaq*, 156 F.R.D. at 522, 528. The defendant asks the Court "to speculate that his defense is grounded in reality, and then to open," *id.*, up to his scrutiny vast amounts of private information pertaining to Dr. Khouj and numerous other individuals, in the hope of finding evidence to support it.[3]

Allowing the defendant to base his claim of relevance on this supposed defense would contravene Rule 17(c)'s prohibition against "use of a trial subpoena to obtain evidence . . . where the claim that subpoenaed materials will contain [relevant] evidence represents mere speculation." *In re Sealed Case*, 121 F.3d at 754-55. The gross overbreadth of the subpoena

---

[2]    Darui's Motion to Dismiss Counts One through Five of the Indictment contains a ten-page statement denying all wrongdoing by the defendant and attempting to shift responsibility to Dr. Khouj. Darui contends, in relevant part, that Dr. Khouj was installed at the Islamic Center by the Saudi Arabian government and that Dr. Khouj, together with the Saudi government, "spread the rumor" of Darui's embezzlement from the Islamic Center in retaliation against Darui's stance in opposition to Islamic radicalism. (Def.'s Mot. Supp. Dismissal of Indictment 4, 14). Darui further claims that the funds he is charged with embezzling were monies voluntarily paid to him by Dr. Khouj in repayment of various debts incurred between Dr. Khouj and Darui. (Def.'s Mot. Supp. Dismissal of Indictment 12). Darui is charged, however, with embezzling money not from Dr. Khouj but from the Center. The assertions in Darui's statement do not constitute a defense to a charge of embezzling *the Center's* money.

[3]    Particularly given that Dr. Khouj is the Director of the complaining witness in this case, upholding such an overbroad and oppressive subpoena could invite retaliation by defendants against complaining witnesses in future cases, and could deter victims of financial crimes from bringing them to the attention of law enforcement officials.

makes any conjecture as to other potential defenses to which the subpoenaed materials might be

relevant entirely speculative. Thus, the defendant has failed to meet his burden of showing that

the requested documents are relevant and admissible, and the subpoena should be quashed under

Rule 17(c).

## IV.    THE SUBPOENA IMPROPERLY DIRECTS THAT THE MATERIAL BE DELIVERED TO THE DEFENDANT'S ATTORNEY.

In the alternative, if the Court declines to quash the subpoena, or any part thereof, it

should modify the subpoena to order delivery of the documents to the Court, rather than to the

office of the defendant's attorney.

Rule 17(c) provides that a 17(c) subpoena "may direct the witness to produce the

designated items in court . . . [and] [w]hen the items arrive, the court may permit the parties and

their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1). Thus, the "plain

language of Rule 17(c) requires subpoenaed documents to be produced before the court." *United

States v. Agboola*, No. 00-100, 01-124, 01-162, 2001 WL 1640094, at *6 (D. Minn. Oct. 31,

2001) (*citing United States v. Najarian*, 164 F.R.D. 484, 487 (D. Minn. 1995)).

The purpose of Rule 17(c) is to "provide a method by which the court may permit either

side to inspect subpoenaed [items] prior to the trial under supervision of the court." *Id.*

(alterations in original) (internal quotations omitted). "[A]llowing documents to be produced

outside the Court's presence would defeat the Court's role of managing the orderly screening of

documentary trial evidence." *Id.*

Here, the subpoena demands that the requested materials be delivered to defendant's

attorney's office. The subpoena thus disregards the plain language of Rule 17(c) by demanding

compliance outside the scope of Rule 17(c). Therefore, the demand for delivery to the

defendant's attorney should be modified.

## CONCLUSION

For the foregoing reasons, Dr. Khouj respectfully requests that the Court grant his motion

to quash or, in the alternative, to modify, the subpoena served on him by the defendant.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*

Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

725 Twelfth Street, N.W.
Washington, DC  20005-5901
(202) 434-5000
(202) 434-5029 (fax)

*Counsel for Dr. Abdullah M. Khouj*

Dated:  October 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, a true copy of the foregoing was served by First

Class Mail on the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C. 20530


Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA 20176

Counsel for Defendant


*Robert P. Watkins*
Robert P. Watkins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 3, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | MAGISTRATE NO. 06-MJ-434 |
| | : | |
| | : | CRIMINAL NO. |
| | : | |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| FARZAD DARUI | : | 18 U.S.C. § 2314 (Interstate |
| | : | Transportation of Stolen Property) |
| | : | 18 U.S.C. § 2 (Causing an Act to be Done) |
| Defendant. | : | 22 D.C. Code §§ 3211(b)(2), 3212(a) |
| | : | (First Degree Theft) |
| | : | 18 U.S.C. § 981(a)(1)(C) and |
| | : | 28 U.S.C. § 2461(c) (Criminal Forfeiture) |
| _____ | : | |

## INDICTMENT

The Grand Jury charges that:

### COUNTS ONE THROUGH FIVE
### (MAIL FRAUD)

#### Introduction

At all times material to this Indictment:

1. The Islamic Center of Washington, D.C. (the "Center") was dedicated in 1957 and is the first mosque to be built in America's national capital.  The Center serves as a regular place of worship for thousands of Washington area Muslims, including many from the diplomatic community.  In addition, the Center provides charitable services for the Washington community,

-1-

02m5 389

**FILED**

OCT - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

including free Islamic study classes, Arabic and Qur'anic language classes and counseling services. The Center is located at 2551 Massachusetts Avenue, NW, Washington, D.C.

2. Defendant, FARZAD DARUI ("DARUI") was employed by the Center as the business manager from 1994 until August 2006. As business manager, defendant FARZAD DARUI was responsible for supervising and maintaining internal systems for accounts payable, accounts receivable, payroll, general ledger and financial reports and cash control. In addition, defendant FARZAD DARUI's duties included monitoring bank balances and financial statements, supervising audits and tax reports and preparing preliminary budgets. Defendant FARZAD DARUI's official duties also included manually preparing checks for payment of venders employed by the Center. Defendant FARZAD DARUI was terminated from his position in August 2006, after it was learned that he had stolen over $430,000 from the Center.

3. In addition to his employment at the Center, defendant FARZAD DARUI was the Resident Agent, Chief Executive Officer and Director of Zaal, Inc., an investment and management services company located in Falls Church, Virginia. The address on record at the State Corporation Commission for the Commonwealth of Virginia ("State Corporation Commission") of Zaal, Inc., is the same as that of defendant FARZAD DARUI's personal residence. That is, 3433 Malbrook Drive, Falls Church, Virginia.

4. Defendant FARZAD DARUI was also the Resident Agent and President of Blue Line Travel, Inc., a travel agency. The address on record at the State Corporation Commission of Blue Line Travel, Inc., is 5613 Leesburg Pike, Suite 21, Falls Church, Virginia.

5. On August 13, 2001, defendant FARZAD DARUI opened a checking account at United Bank in Arlington, Virginia in the name of Zaal, Inc., and listed the address of Zaal, Inc., as 3433

-2-

Malbrook Drive, Falls Church, Virginia (account number XXXX-4295, hereinafter "Zaal checking account"). Defendant FARZAD DARUI was the only authorized signatory for the Zaal checking account.

6. Defendant FARZAD DARUI also maintained a checking account on behalf of Blue Line Travel Inc., at First Union/Wachovia Bank (account number XXXXXXXXX5132, hereinafter "Blue Line checking account"). Defendant FARZAD DARUI along with his wife, Josefine Darui, were the only signatories for the Blue Line checking account.

### The Center's Bank Accounts

7. The Center owned and maintained the following bank accounts related to its operations:

a. Bank of America account number XXXXXXXXX2726 was an operating account established to segregate funds donated by the Kingdom of Saudi Arabia into a separate account (hereinafter, "Islamic Center special account"). Funds from this account were used to pay the Center's legitimate business expenses such as payroll, general maintenance costs, insurance and utilities.

b. Bank of America account number XXXXXXXXX5929 was an operating account established to pay the Center's legitimate administrative expenses (hereinafter, "Islamic Center administrative account").

c. Bank of America account number XXXXXXXXX4037 was an account established to receive charitable and other contributions from donors (hereinafter, "Islamic Center charity account").

8. Dr. Abdullah M. Khouj, the Director of the Center, (the "Director") was the only authorized signatory for the Islamic Center special account.

-3-

9. Without the authorization or approval of the Director or anyone else at the Center, defendant FARZAD DARUI, added himself as an authorized signatory to the bank accounts maintained by the Center at Bank of America including the Islamic Center administrative account and the Islamic Center charity account.

10. It was the policy and practice of the Center that only the Director authorized payments and signed checks written on the Islamic Center administrative account and the Islamic Center charity account.

### The Scheme and Artifice to Defraud

11. Between from at least October 2000, to in or about January 2006, in the District of Columbia and elsewhere, defendant FARZAD DARUI, did knowingly devise, participate in and execute a scheme and artifice to defraud the Islamic Center of Washington, D.C., and to obtain money and property belonging to the Islamic Center of Washington, D.C., by means of false and fraudulent pretenses, representations and promises.

### · Manner and Means

12. From in or about October 2000, to in or about January 2006, defendant FARZAD DARUI, without authorization, obtained numerous checks from the Islamic Center of Washington, D.C., by developing a scheme by which he would write and issue, or cause to be written, signed and issued, or falsely altered checks written on the Center's various bank accounts or checks belonging to the Center which he used for his personal enrichment.

13. As the business manager for the Center, defendant FARZAD DARUI received mail and gathered invoices received from various vendors and creditors of the Center. After doing so, defendant FARZAD DARUI wrote checks on various Islamic Center bank accounts that were made

-4-

payable to the respective vendors and creditors. Defendant FARZAD DARUI then took the checks and the corresponding invoices to the Director for approval of payment. When payment of the various invoices was approved, the Director would sign the checks. Thereafter, copies of the invoices and the associated original checks would be made. Defendant FARZAD DARUI mailed the checks, via the United States Postal Service, to the appropriate vendor or creditor.

14. It was part of the fraudulent scheme and artifice that instead of sending payment to the Center's vendors and creditors, defendant FARZAD DARUI gained control of funds belonging to the Center by altering the payee line of checks that had been endorsed by the Director and written on the Islamic Center special account, the Islamic Center administrative account and the Islamic Center charity account.

15. It was further part of the scheme and artifice that defendant FARZAD DARUI substituted the original named payee with various versions of the names of Blue Line Travel, Inc., Zaal, Inc., and other businesses which he controlled and for which he was an authorized signatory.

16. It was further part of the scheme and artifice that defendant FARZAD DARUI negotiated the altered checks and deposited funds stolen from the Center directly into either the Zaal checking account or into the Blue Line checking account.

17. In was further a part of the scheme and artifice that defendant FARZAD DARUI obtained checks payable to employees or contractors of the Center and, without authority from the named payee on the checks, negotiated and deposited the checks directly into either the Zaal checking account or into the Blue Line checking account.

18. Throughout the scheme, defendant FARZAD DARUI submitted duplicate invoices and checks to the Director who endorsed the duplicate checks without realizing the payment was a

duplicate check for an invoice that supposedly had been paid. Defendant FARZAD DARUI embezzled either the original endorsed check or the duplicate endorsed check in the aforementioned manner and sent the remaining endorsed check to the appropriate creditor or vendor thereby enabling defendant FARZAD DARUI to carry out and conceal his embezzlement of the Center's funds.

19. In approximately February 2002, the mailing information for the Islamic Center special account was changed from the Center to a United States Post Office box in Washington, D.C. This change of address was unknown and unauthorized by the Director.

20. It was further part of the scheme and artifice that to conceal the fact that defendant FARZAD DARUI was altering the Center's checks and depositing the proceeds of the checks into bank accounts he controlled, defendant FARZAD DARUI rented a United States Post Office box in Washington, D.C., in the name of the Islamic Center without the knowledge or consent of the Director or anyone else at the Center (hereinafter, "P.O. Box 53188").

21. It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, on the application for P.O. Box 53188, defendant FARZAD DARUI listed the address of the Islamic Center as that of his personal residence, that is, 3433 Malbrook Drive, Falls Church, Virginia.

22. It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, defendant FARZAD DARUI caused Bank of America to mail, via the United States Postal Service, monthly statements and processed checks for that account to P.O. Box 53188.

23. It was further part of the scheme and artifice that defendant FARZAD DARUI deposited the Center's checks directly into his Zaal checking account or into his Blue Line checking account.

-6-

During the course of the scheme from on or about October 2000 to on or about January 2006, defendant FARZAD DARUI stole in excess of $430,000 from the Center.

24. On or about each of the approximate dates listed below, in the District of Columbia and elsewhere, defendant FARZAD DARUI, for the purpose of executing the above-described scheme and artifice and attempting to do so, knowingly caused the following items to be delivered by mail by the United States Postal Service according to the directions thereon.

| Count | Approx. Date | Item | Mailed From | Mailed To |
|-------|-------------|------|-------------|-----------|
| 1 | 10-10-02 | Islamic Center special account monthly statement for the period 09-11-02 through 10-10-02 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 2 | 05-09-03 | Islamic Center special account monthly statement for the period 04-11-03 through 05-09-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 3 | 11-06-03 | Islamic Center special account monthly statement for the period 10-11-03 through 11-06-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 4 | 03-11-04 | Islamic Center special account monthly statement for the period 02-07-04 through 03-11-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

| 5 | 07-12-04 | Islamic Center special account monthly statement for the period 06-11-04 through 07-12-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

**(Mail Fraud and Causing an Act to be Done, in violation of
Title 18, United States Code, Sections 1341 and 2)**

**COUNT SIX
(INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)**

25.  Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

26.  From on or about October 2000, to in or about January 2006, in the District of Columbia, the defendant FARZAD DARUI, did willfully and knowingly transport, transmit and transfer, in interstate commerce, that is, between the District of Columbia and the Commonwealth of Virginia, a security of the value of $5,000 or more, that is, checks as enumerated below having a combined value of $8,716.48, well knowing the same to have been stolen:

| Count | Check Dated | Check # /Original Payee | Inserted Payee | Amount |
|-------|-------------|-------------------------|----------------|--------|
| 6 | 04/30/2003 | 78436 / Washington Gas | B.L.T. Services Inc. | $4,516.48 |
| | 10/31/2003 | 78736 / Travelers | Blue Line Incorporated | $4,200.00 |

**(Interstate Transportation of Stolen Property and Causing an Act to be Done,
in violation of 18 United States Code, Sections 2314 and 2)**

## COUNT SEVEN
## (THEFT IN THE FIRST DEGREE)

27.  Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

28.  From between in or about October 2000, until in or about January 2006, in a continuing course of conduct, in the District of Columbia, defendant FARZAD DARUI wrongfully obtained over $430,000 in monies from the Islamic Center of Washington, D.C., with the intent to appropriate the property to his own use or to the use of third persons.

### (Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211(b)(2) and 3212(a))

## FORFEITURE ALLEGATION

1.      The violations alleged in Counts 1 through 5 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461.

2.      Upon conviction of one or more of the offenses alleged in Counts 1 through 5 of this Indictment, defendant FARZAD DARUI shall forfeit to the United States pursuant to Title18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

MONEY JUDGMENT – $434,911.21, which represents a sum of money equal to an amount of proceeds obtained as a result of the defendant's mail fraud scheme, in violation of Title 18, United States Code, Section 1341.

By virtue of the offenses charged in Counts 1 through 5 of this Indictment, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) (as incorporated by Title 28, United States Code, Section 2461 (c)).

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. Section 853(p) as incorporated by 28 U.S.C.

Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above.

**(Criminal Forfeiture, pursuant to Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C) and Title 21, United States Code, Section 853), and Fed. R. Crim. P. 32.2)**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

-11-

AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

FOR THE      DISTRICT OF      COLUMBIA

UNITED STATES

**V.**

FARZAD DARUI

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:  Crim. No. 1:07-cr-00149-RCL

TO:    Dr. Abdullah M. Khouj
2551 Massachusetts Avenue, NW
Washington, DC  20008

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case.  This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| NOT APPLICABLE | N/A |
| | DATE AND TIME |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Attachment "A"

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Nancy Mayer-Whittington | 8/28/07 |
| (By) Deputy Clerk | 8/27/07 |

02ms 387

**FILED**

OCT - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Victoria Toensing, diGenova & Toensing, 1776 K St. NW, #737, Washington, DC  20006
(202) 289-7701

9/20/07

AO89 (Rev 7/95) Subpoena in a Criminal Case (Reverse)

| PROOF OF SERVICE | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS ☐ YES   ☐ NO   AMOUNT $ _____ |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

ADDITIONAL INFORMATION

# ATTACHMENT "A"

1. All written agreements entered into with Farzad Darui between July 1, 1984 and December 31, 2006;

2. All marriage certificates and/or licenses, and divorce certificates and/or decrees to which you applied and/or were a party between July 1, 1984 and December 31, 2006.

3. All requests to the Saudi Embassy and/or Saudi Government and written communication with the Saudi Embassy and/or Saudi Government regarding requests for marriage including, but not limited to, any "marriage" under Islamic Law, from July 1, 1984 through December 31, 2006;

4. All written settlement agreements with any female between January 1, 1987 and December 31, 2006;

5. All written contracts, agreements, and cash receipts to which Debbi Estrada was a party between January 1, 1990 and December 31, 2006;

6. All written contracts, agreements, and cash receipts to which Rachida Zouhri was a party between January 1, 1990 and December 31, 2006;

7. All written contracts, agreements, and cash receipts to which Noufisa Zouhri was a party between January 1, 1990 and December 31, 2006;

8. All personal IRS filings and/or returns for the tax years of 2000, 2001, 2002, 2003, 2004, 2005, and 2006;

9. Names of all persons to whom you personally gave charitable contributions, and/or for whom you took a charitable deduction, for tax years 2000 through 2006;

10. All personal bank statements for checking, savings, and investment accounts to which you were a signatory between January 1, 2000 and December 31, 2006;

11. All payment receipts, deposit records, and correspondence regarding all payments and/or gifts received from Saudi Arabia and/or the Muslim World League, including their representatives between July 1, 1984 through December 31, 2006;

12. Records of all income received from Prince Bandar bin Sultan bin Abdulaziz Al-Saud, the Saudi Arabian Embassy, and/or the Saudi Arabian Government for the years 1999 through 2006;

13. All residences and mailing addresses used between July 1, 1984 through December 31, 2006, including, but not limited to Post Office Boxes;

14. All Visa petitions, contracts, and residency applications filed on your own behalf, or on behalf of any of your wives, assistants, personal employees, or housework employees between July 1, 1984 and December 31, 2006;

15. All employment records, files, contracts, agreements, payment records, petitions, and applications for any personal assistant, including, but not limited to housework personnel who you employed in your capacity as Director of The Islamic Center, or as a Saudi Arabian diplomat, or personally between July 1, 1984 and December 31, 2006;

16. All written correspondence with the Saudi Embassy and/or Saudi Government including, but not limited to, correspondence in your capacity as either the Director of The Islamic Center, or as an employee of the Saudi government between July 1, 1984 and December 31, 2006;

17. All time cards, personnel records, IRS 1099 forms, W-4 forms, employment contracts, employment agreements, paycheck stubs, payment records, and payment receipts for all employees and independent contractors of The Islamic Center during your tenure as Director between July 1, 1984 and December 31, 2006;

18. All authorizations for expenditures for all Islamic Center accounts, and for the Special Account from January 1, 1999 through December 31, 2006; and

19. All cancelled checks made out to Farzad Darui, Blue Line Travel, Inc., Blue Line Travel, B.L.T., Zaal, Inc. and Zaal to which you were a signatory between January 1, 1992 and December 31, 2006.

        All requests for documents above includes electronically stored information.

        These items must be returned to our office no later than the close of business Wednesday, September 12, 2007.

diGenova & Toensing
1776 K St., NW, # 737
Washington, DC 20006