## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 1:07-mc-00387 (RCL)** |
| | ) | |
| **FARZAD DARUI,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MOTION OF ABDULLAH M. KHOUJ TO QUASH THE
### SUBPEONA SERVED BY DEFENDANT FARZAD DARUI

Dr. Abdullah M. Khouj, through undersigned counsel, respectfully moves this Court to quash the Criminal Rule 17(c) subpoena served on Dr. Khouj on October 15, 2007 by defendant Farzad Darui. The subpoena is fatally deficient under Rule 17(c) of the Federal Rules of Criminal Procedure because it is not specific in its requests, and it seeks documents that are irrelevant to the instant case and that are inadmissible at trial. Moreover, the subpoena grossly infringes on the personal privacy of Dr. Khouj and others in a manner that is unreasonable and oppressive.

The grounds for this motion are fully set forth in the accompany Memorandum of Law.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*
Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

October 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2007, a true copy of the foregoing was served electronically upon the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, DC 20530

Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing, Esq.
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, DC 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA  20176

*Counsel for Defendant*

_Robert P. Watkins_
Robert P. Watkins

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Misc. No 1:07-mc-00387 (RCL) |
| | ) |
| FARZAD DARUI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE MOTION OF ABDULLAH M. KHOUJ
## TO QUASH THE SUBPEONA SERVED BY DEFENDANT FARZAD DARUI

### BACKGROUND

On June 8, 2007, Farzad Darui ("Darui" or "defendant") was charged in a seven-count indictment with a scheme to defraud his former employer, The Islamic Center of Washington, D.C. ("the Center"), and to obtain money and property belonging to the Center by means of false and fraudulent pretenses, representations, and promises. The indictment is attached hereto at Exhibit A.

The charges against Darui arise from his employment as the Business Manager of the Center from 1994 until his firing in August 2006. The indictment charges Darui with falsely writing and issuing checks, falsely causing checks to be written, signed, and issued, or falsely altering checks belonging to the Center or drawn on the Center's bank accounts.

The instant Motion is in response to the Federal Rule of Criminal Procedure 17(c) subpoena served on the Director of the Center, Dr. Abdullah M. Khouj, by the defendant on October 15, 2007. The subpoena is attached hereto at Exhibit B.[1]

On October 3, 2007, this Court granted Darui's motion for permission to issue Rule 17(c) subpoenas. The motion was unopposed by the United States Attorney's Office. Dr. Khouj, a non-party to the criminal case, had no notice of defendant's Rule 17(c) motion, and did not participate in any proceedings leading to the Court's grant of the Order.

The current subpoena, which is the subject of this motion, demands that Dr. Khouj produce a disturbing array of private, and mostly confidential, material, including, *inter alia*, "[a]ll marriage certificates . . . and divorce certificates" to which Dr. Khouj was a party over a 21.5-year period (Subpoena ¶ 2); "[a]ll [of Dr. Khouj's] personal IRS filings and/or returns" for a 5-year period (Subpoena ¶ 6); "[a]ll documents reflecting charitable contributions" by Dr. Khouj over a 5-year period (Subpoena ¶ 7); and "[a]ll personal bank statements and cancelled checks for all checking, savings, and investment accounts" held in a 7-year period (Subpoena ¶ 8). The

---

[1]    The subpoena served on Dr. Khouj on October 15, 2007 was the second Rule 17(c) subpoena served on him by Darui. The first was served late in the afternoon on September 20, 2007. After service of the first subpoena, Dr. Khouj's counsel spoke with Darui's counsel to inform him that the September 20 subpoena was untimely. Darui's counsel did not state that he would not insist on compliance with that subpoena, nor did he consent to serve a new subpoena on Dr. Khouj. He did state that he might consider filing something with the Court, but he never specified when or what he would file. Because Dr. Khouj's counsel was not subsequently notified that Darui's counsel planned to withdraw the September 20 subpoena, Dr. Khouj's counsel filed a motion to quash that subpoena on October 1, 2007.

Dr. Khouj's counsel first became aware of the withdrawal of the September 20 subpoena on October 16, 2007, when Dr. Khouj's counsel called Darui's counsel to inquire whether the October 15, 2007 subpoena superseded the original. Although Darui's Brief Regarding Motion to Quash Subpoena to Abdullah Khouj stated that Dr. Khouj's motion to quash the September 20 subpoena was moot because "Darui's counsel agreed not to insist on compliance with the old subpoena," Dr. Khouj's counsel was not served with that Brief until after the October 16 telephone call. Defendant Farzad Darui's Brief Regarding Motion to Quash Subpoena to Abdullah Khouj 1 (filed Oct. 15, 2007).

requested materials are neither relevant nor admissible at trial, and the demands listed in the

subpoena are too broad to meet Rule 17(c)'s specificity requirement. Because Darui cannot

demonstrate that the broad categories of documents he demands comport with the requirements

of Rule 17(c), the subpoena should be quashed.

## ARGUMENT

Rule 17(c) allows a criminal defendant to subpoena "books, papers, documents . . . or

other objects . . . designate[d] [therein]" for use at trial as long as compliance would not be

"unreasonable or oppressive." Fed. R. Crim. P. 17(c)(1)–(2). This Court's authority to quash or

modify an "unreasonable or oppressive" subpoena ensures that "[e]very [Rule 17(c)] subpoena

[is] a 'good faith effort . . . to obtain evidence.'" *United States v. Arditti*, 955 F.2d 331, 345 (5th

Cir. 1992) (*quoting Bowman Dairy Co. v. United States*, 341 U.S. 214, 219–20 (1951)).

As the Supreme Court emphasized in *United States v. Nixon*, 418 U.S. 683 (1974), one of

the two fundamental characteristics of Rule 17(c) is that "it was not intended to provide a means

of discovery for criminal cases." *Id.* at 698 (*citing Bowman*, 341 U.S. at 220); *see also United

States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C. 2006). Unlike the civil rules of discovery, Rule

17(c) simply expedites trial by allowing the defendant to inspect material that may be admitted at

trial. *Nixon*, 418 U.S. at 698-99; *see also United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir.

1976) (per curiam). Courts have cautioned against expansion of Rule 17(c) in criminal cases:

"Courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby

undercutting the strict limitation of discovery in criminal cases." *United States v. Cuthbertson*,

630 F.2d 139, 146 (3d Cir. 1980); *see also Libby*, 432 F. Supp. 2d at 30.

To safeguard the limited role of the Rule 17(c) subpoena in criminal cases, the Supreme

Court has held that a defendant seeking to enforce a Rule 17(c) subpoena "must clear three

hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700; *see also*

*Libby*, 432 F. Supp. 2d at 30–31. "A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified." *Id*. at 31; *see, e.g., United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989).

Here, Darui's subpoena is unreasonable and oppressive because he cannot clear any of the three hurdles necessary to obtain the broad range of materials called for by the subpoena. The subpoena's demands are irrelevant to a viable defense, inadmissible at trial, and impermissibly broad.

## I.     THE MATERIALS SOUGHT ARE IRRELEVANT TO THE CHARGES IN THE INDICTMENT, AND ARE INADMISSIBLE AT TRIAL.

The subpoena should be quashed because it fails *Nixon*'s requirements of relevance and admissibility.  Under *Nixon*, in order to require production before trial, the defendant must demonstrate that the subpoenaed materials constitute relevant and admissible evidence.  418 U.S. at 700.  Unlike the civil rules of discovery, in a criminal case "[t]he fact that [materials] are potentially relevant or may be admissible is not sufficient." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (*citing United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)).  "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In re Sealed Case*, 121 F.3d 729, 754–55 (D.C. Cir. 1997) (per curiam).

Thus, the defendant must show that the subpoenaed materials are relevant and admissible with regard to the indictment or to a "viable defense." *United States v. Rezaq*, 156 F.R.D. 514, 529 (D.D.C. 1994) (Lamberth, J.), *vacated in part on other grounds*, 899 F. Supp. 697 (D.D.C. 1995) (Lamberth, J.).  A defense is not "viable" and cannot form a basis for a Rule 17(c)

- 4 -

subpoena when the "defendant . . . produce[s] little to convince [the] court that [the] defense is not created out of thin air." *Id.* at 522, 528.  In *Rezaq*, this Court quashed subpoenas *duces tecum* on relevance grounds because, in the absence of evidence, the Court declined to "speculate that [the defendant's] defense [was] grounded in reality." *Id.*

Here, the defendant has not carried, and cannot carry his burden of showing that the requested materials are relevant to the indictment or to a viable defense.  The defendant's failure to carry this burden is especially egregious because compliance with the subpoena would work a gross invasion of Dr. Khouj's privacy.  Aside from the two paragraphs (Subpoena ¶ 1, 14) that demand materials related to Darui or his various companies, the demands focus on obtaining a vast array of Dr. Khouj's personal and financial information, which are private and confidential.  Those categories include:

(1)    his marital and relationship history over a period of 21.5 years (Subpoena ¶¶ 2–3);

(2)    details about his private finances in the form of (a) IRS forms filed over a 5-year period, (b) personal bank statements and cancelled checks for all checking, savings, and investment accounts held during a 7-year period, (c) W-8BEN filings over a 7-year period, and (d) records of income received from Saudi Arabia over a 7-year period (Subpoena ¶¶ 6, 8,10, 13);

(3)    his charitable contributions over a period of 5 years (Subpoena ¶ 7);

(4)    any Post Office boxes used over a period of 21.5 years (Subpoena ¶ 11);

(5)    his Visa petitions and residency applications filed over a period of 21.5 years (Subpoena ¶ 12).

Darui contends that this personal information demanded from Dr. Khouj is needed to prove the truth of the accusations leveled in Darui's Motion to Dismiss.  Defendant Farzad Darui's Brief in Opposition To Motion to Quash Subpoena to the Islamic Center 1 (filed Oct. 15,

2007) (hereinafter, "Def. Br. In Opp.").[2]  Darui has failed, however, to satisfy the requirement

that he demonstrate that his accusations constitute a viable defense.  Because those accusations

are, indeed, irrelevant to a viable defense (and also are entirely unfounded), they are irrelevant

and inadmissible at trial.

Darui's apparent claim that Dr. Khouj gave him the funds to discharge a debt Dr. Khouj

owed him does not state a defense to the charges in the indictment, the gist of which is that Darui

embezzled funds from *the Center*.  How Darui's accusations in his Memorandum in Support of

his Motion to Dismiss would constitute a defense to a charge of embezzlement from the Center is

wholly unexplained and inexplicable.

Moreover, here, as in *Rezaq*, there is no evidence demonstrating that Darui's claim is not

"created out of thin air."  156 F.R.D. at 522, 528.  Darui provides no support for his claim:  he

includes only a handful of exhibits, the bulk of which are newspaper articles and print-outs of

websites that purport to show that he opposes Islamic radicalism.  Appendix to Defendant's

Memorandum of Law in Support of Motion to Dismiss Counts One Through Five of the

Indictment 1–37 (filed Aug. 15, 2007) (hereinafter, "App. to Def. Mem. Supp. Mot. to

Dismiss").  Darui does not include a shred of evidence to support his contention that "the funds

he is accused of embezzling were . . . repayments for Darui's financial assistance in supporting

---

[2]     The memorandum in support of Darui's motion to dismiss contains a ten-page statement
denying all wrongdoing by the defendant and attempting to shift responsibility to Dr. Khouj.
Darui contends that Dr. Khouj was installed at the Islamic Center by the Saudi Arabian
government and that Dr. Khouj, together with the Saudi government, "spread the rumor" of
Darui's embezzlement from the Islamic Center in retaliation against Darui's stance in opposition
to Islamic radicalism.  Defendant Farzad Darui's Statement of the Case and Memorandum of
Law In Support of Motion to Dismiss Counts One Through Five of the Indictment 4, 14 (filed
August 15, 2007) (hereinafter, "Def. Mem. Supp. Mot. to Dismiss").  Darui further claims that
the funds he is charged with embezzling were monies voluntarily paid to him by Dr. Khouj in
repayment of various debts incurred between Dr. Khouj and Darui.  Def.  Mem. Supp. Mot. to
Dismiss 12.

Khouj's wives." Def. Br. In Opp. 10. Darui fails to provide the Court with a single affidavit in support of his contentions, a failure that was fatal in *Rezaq*. 156 F.R.D. at 522, 528.

Ironically, Darui supports the entirety of his two-page assault on Dr. Khouj's character, Def. Mem. Supp. Mot. to Dismiss 11–12, with two pieces of evidence: (1) a document showing that Dr. Khouj has *one* wife, App. to Def. Mem. Supp. Mot. to Dismiss 31, attached hereto as Exhibit C, and (2) a *Washington Post* commentary Dr. Khouj wrote as a defense of Islamic values, *id*. at 32, attached hereto as Exhibit D.[3]

As in *Rezaq*, the defendant asks the Court "to speculate that his defense is grounded in reality, and then to open," 156 F.R.D. at 522, to his scrutiny vast amounts of confidential, private information about Dr. Khouj in the hope of finding evidence to support it. Allowing the defendant to base his claim of relevance on this supposed defense would contravene Rule 17(c)'s prohibition against "use of a trial subpoena to obtain evidence . . . where the claim that subpoenaed materials will contain [relevant] evidence represents mere speculation." *In re Sealed Case*, 121 F.3d at 754–55.

Here, this prohibition is paramount because of Dr. Khouj's role as the Director of the victim. Enforcing, on the basis of the defendant's unsupported accusations, such an overbroad and oppressive subpoena to a person so closely associated with the victim would invite retaliation by defendants against victims in future cases.

Even assuming, *arguendo*, that Darui's baseless accusations constituted a viable defense, many of the subpoena's demands are not even relevant to those accusations. For example, when and whether Dr. Khouj filed Visa petitions or residency applications has no bearing on whether

---

[3]     Darui mischaracterizes Dr. Khouj's commentary as showing a "positive view of polygamy." Def. Mem. Supp. Mot. to Dismiss 12. In fact, the commentary uses the contrast between "adultery" and "polygamy" only to illustrate his argument that the sexual politics of the West are not superior to those of Islam. Ex. D.

Dr. Khouj voluntarily gave Darui the funds that Darui is charged with embezzling. Likewise, records showing whether Dr. Khouj had been legally married or divorced, his use of a Post Office Box, his income from the Saudi government, or his IRS filings over a 5-year period are not relevant to whether Dr. Khouj voluntarily paid the allegedly embezzled funds to Darui.

In sum, Darui has failed to carry his burden of showing that the requested documents are relevant to a viable defense and admissible at trial. Therefore, the Court should quash the subpoena under Rule 17(c).

## II.    THE SUBPOENA SHOULD BE QUASHED BECAUSE THE BROAD CATEGORIES OF MATERIALS SOUGHT FAIL TO MEET THE SPECIFICITY REQUIREMENT.

The breadth of the personal information demanded by the subpoena is irreconcilable with *Nixon*'s specificity requirement. The subpoena's demands for broad categories of documents from Dr. Khouj constitute an impermissible "fishing expedition."

The specificity requirement preserves the distinction between Rule 17(c) and civil discovery by "ensur[ing] that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *Libby*, 432 F. Supp. 2d at 32 (internal quotations omitted). A defendant may not use the Rule 17(c) subpoena "to examine general categories of documents with the hope that they contain information that may be helpful to his defense." *Id.* at 35. Rather, a Rule 17(c) subpoena must provide requests specific enough to enable a court to form a basis "upon which it [could] draw a reasonable inference that there is a real likelihood that the [material] would contain relevant and admissible evidence." *Id.* at 34; *Nixon*, 418 U.S. at 700.

This Court's recent decision in *United States v. Libby* enforced a Rule 17(c) subpoena requesting "a narrow subcategory of documents . . . which cover a discrete topic and typically limit the pertinent time frame," *Libby*, 432 F. Supp. 2d at 38, but quashed a Rule 17(c) subpoena

requesting "general categories of documents." *Id.* at 35. If a defendant "cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Id.* at 31 (*quoting United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)).

Here, the subpoena wholly disregards the specificity requirement of Rule 17(c). The subpoena is crafted as if it were a civil discovery request rather than a Rule 17(c) subpoena: twelve of the fourteen paragraphs (Subpoena ¶¶ 2–9, 12–14) demand "all" documents within a broad category; only one paragraph (Subpoena ¶ 1) identifies a single specific document . The defendant has failed to "reasonably specify the information . . . believed to be contained in the documents sought," and, in all but two of the demands (Subpoena ¶¶ 1, 9), the subpoena fails to identify a single document, discrete topic, or pertinent time frame. *Libby*, 432 F. Supp. 2d at 31. Instead, the subpoena broadly demands general categories of documents accumulated by Dr. Khouj over periods ranging from 5 to 21.5 years.

Even if the defense Darui alleges in his Memorandum In Support of his Motion to Dismiss were viable, the documents he seeks are far broader than those related to that defense. For example, rather than identifying specific financial documents relevant to supporting his claim that Dr. Khouj owed him money, Darui demands, *inter alia*, "[a]ll personal bank statements and cancelled checks for all checking, savings, and investment accounts" over a 7-year period (Subpoena ¶ 8), "[a]ll personal IRS filings and returns" over a 5-year period. (Subpoena ¶ 6), and "[a]ll documents reflecting charitable contributions" over a 5-year period (Subpoena ¶ 7). The defendant's failure to identify with specificity particular documents

evidences an impermissible aim "to examine general categories of documents with the hope that they contain information that may be helpful to his defense." *Libby*, 432 F. Supp. 2d at 35.

Because the subpoena fails to meet the specificity requirement explained in *Nixon*, it is unreasonable and oppressive. Therefore, the Court should quash it.

## III.    THE SUBPOENA IMPROPERLY DIRECTS THAT THE DOCUMENTS BE DELIVERED TO THE DEFENDANT'S ATTORNEYS.

In the alternative, if the Court declines to quash the subpoena in its entirety, it should modify the subpoena to order delivery of the documents to the Court, rather than to the office of the defendant's attorneys.

Rule 17(c) provides that a 17(c) subpoena "may direct the witness to produce the designated items in court . . . . [and] [w]hen the items arrive, the [C]ourt may permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1). Thus, "the plain language of Rule 17(c) requires subpoenaed documents 'to be produced before the court.'" *United States v. Agboola*, Nos. 00-100, 01-124, 01-162, 2001 WL 1640094, at *6 (D. Minn. Oct. 31, 2001) (*quoting United States v. Najarian*, 164 F.R.D. 484, 487 (D. Minn. 1995)).

The purpose of Rule 17(c) is to "provide a method by which the court may permit either side to inspect subpoenaed [items] prior to the trial under *supervision of the court*." *Id.* (emphasis added) (alterations in original) (internal quotations omitted). "[A]llowing documents to be produced outside the Court's presence would defeat the Court's role of managing the orderly screening of documentary trial evidence." *Id.*

Here, the subpoena demands that the documents called for be delivered to defendant's attorneys' office. The subpoena thus disregards the plain language of Rule 17(c) by demanding compliance outside the scope of Rule 17(c). Moreover, given the nature of the accusations Darui, through counsel, has leveled against Dr. Khouj and the nature of the documents sought by

the subpoena, it would be inappropriate to require production of those documents outside the Court's supervision. Therefore, the demand for delivery to the defendant's attorneys should be modified.

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Khouj's motion to quash or, in the alternative, to modify, the subpoena served on him by the defendant.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*

Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

725 Twelfth Street, N.W.
Washington, DC  20005-5901
(202) 434-5000
(202) 434-5029 (fax)

*Counsel for Dr. Abdullah M. Khouj*

Dated:  October 24, 2007

# EXHIBIT A

## Misc. No. l:07-mc-000387

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term
### Grand Jury Sworn in on November 3, 2006

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE NO. 06-MJ-434** |
| | : | |
| | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 1341 (Mail Fraud)** |
| **FARZAD DARUI** | : | **18 U.S.C. § 2314 (Interstate** |
| | : | **Transportation of Stolen Property)** |
| | : | **18 U.S.C. § 2 (Causing an Act to be Done)** |
| **Defendant.** | : | **22 D.C. Code §§ 3211(b)(2), 3212(a)** |
| | : | **(First Degree Theft)** |
| | : | **18 U.S.C. § 981(a)(1)(C) and** |
| | : | **28 U.S.C. § 2461(c) (Criminal Forfeiture)** |
| | : | |

## INDICTMENT

The Grand Jury charges that:

### COUNTS ONE THROUGH FIVE
### (MAIL FRAUD)

#### Introduction

At all times material to this Indictment:

1. The Islamic Center of Washington, D.C. (the "Center") was dedicated in 1957 and is the first mosque to be built in America's national capital. The Center serves as a regular place of worship for thousands of Washington area Muslims, including many from the diplomatic community. In addition, the Center provides charitable services for the Washington community,

-1-

including free Islamic study classes, Arabic and Qur'anic language classes and counseling services. The Center is located at 2551 Massachusetts Avenue, NW, Washington, D.C.

2. Defendant, FARZAD DARUI ("DARUI") was employed by the Center as the business manager from 1994 until August 2006. As business manager, defendant FARZAD DARUI was responsible for supervising and maintaining internal systems for accounts payable, accounts receivable, payroll, general ledger and financial reports and cash control. In addition, defendant FARZAD DARUI's duties included monitoring bank balances and financial statements, supervising audits and tax reports and preparing preliminary budgets. Defendant FARZAD DARUI's official duties also included manually preparing checks for payment of venders employed by the Center. Defendant FARZAD DARUI was terminated from his position in August 2006, after it was learned that he had stolen over $430,000 from the Center.

3. In addition to his employment at the Center, defendant FARZAD DARUI was the Resident Agent, Chief Executive Officer and Director of Zaal, Inc., an investment and management services company located in Falls Church, Virginia. The address on record at the State Corporation Commission for the Commonwealth of Virginia ("State Corporation Commission") of Zaal, Inc., is the same as that of defendant FARZAD DARUI's personal residence. That is, 3433 Malbrook Drive, Falls Church, Virginia.

4. Defendant FARZAD DARUI was also the Resident Agent and President of Blue Line Travel, Inc., a travel agency. The address on record at the State Corporation Commission of Blue Line Travel, Inc., is 5613 Leesburg Pike, Suite 21, Falls Church, Virginia.

5. On August 13, 2001, defendant FARZAD DARUI opened a checking account at United Bank in Arlington, Virginia in the name of Zaal, Inc., and listed the address of Zaal, Inc., as 3433

Malbrook Drive, Falls Church, Virginia (account number XXXX-4295, hereinafter "Zaal checking account"). Defendant FARZAD DARUI was the only authorized signatory for the Zaal checking account.

6. Defendant FARZAD DARUI also maintained a checking account on behalf of Blue Line Travel Inc., at First Union/Wachovia Bank (account number XXXXXXXXX5132, hereinafter "Blue Line checking account"). Defendant FARZAD DARUI along with his wife, Josefine Darui, were the only signatories for the Blue Line checking account.

The Center's Bank Accounts

7. The Center owned and maintained the following bank accounts related to its operations:

a. Bank of America account number XXXXXXXX2726 was an operating account established to segregate funds donated by the Kingdom of Saudi Arabia into a separate account (hereinafter, "Islamic Center special account"). Funds from this account were used to pay the Center's legitimate business expenses such as payroll, general maintenance costs, insurance and utilities.

b. Bank of America account number XXXXXXXX5929 was an operating account established to pay the Center's legitimate administrative expenses (hereinafter, "Islamic Center administrative account").

c. Bank of America account number XXXXXXXX4037 was an account established to receive charitable and other contributions from donors (hereinafter, "Islamic Center charity account").

8. Dr. Abdullah M. Khouj, the Director of the Center, (the "Director") was the only authorized signatory for the Islamic Center special account.

-3-

9. Without the authorization or approval of the Director or anyone else at the Center, defendant FARZAD DARUI, added himself as an authorized signatory to the bank accounts maintained by the Center at Bank of America including the Islamic Center administrative account and the Islamic Center charity account.

10. It was the policy and practice of the Center that only the Director authorized payments and signed checks written on the Islamic Center administrative account and the Islamic Center charity account.

## The Scheme and Artifice to Defraud

11. Between from at least October 2000, to in or about January 2006, in the District of Columbia and elsewhere, defendant FARZAD DARUI, did knowingly devise, participate in and execute a scheme and artifice to defraud the Islamic Center of Washington, D.C., and to obtain money and property belonging to the Islamic Center of Washington, D.C., by means of false and fraudulent pretenses, representations and promises.

### · Manner and Means

12. From in or about October 2000, to in or about January 2006, defendant FARZAD DARUI, without authorization, obtained numerous checks from the Islamic Center of Washington, D.C., by developing a scheme by which he would write and issue, or cause to be written, signed and issued, or falsely altered checks written on the Center's various bank accounts or checks belonging to the Center which he used for his personal enrichment.

13. As the business manager for the Center, defendant FARZAD DARUI received mail and gathered invoices received from various vendors and creditors of the Center. After doing so, defendant FARZAD DARUI wrote checks on various Islamic Center bank accounts that were made

-4-

payable to the respective vendors and creditors. Defendant FARZAD DARUI then took the checks and the corresponding invoices to the Director for approval of payment. When payment of the various invoices was approved, the Director would sign the checks. Thereafter, copies of the invoices and the associated original checks would be made. Defendant FARZAD DARUI mailed the checks, via the United States Postal Service, to the appropriate vendor or creditor.

14. It was part of the fraudulent scheme and artifice that instead of sending payment to the Center's vendors and creditors, defendant FARZAD DARUI gained control of funds belonging to the Center by altering the payee line of checks that had been endorsed by the Director and written on the Islamic Center special account, the Islamic Center administrative account and the Islamic Center charity account.

15. It was further part of the scheme and artifice that defendant FARZAD DARUI substituted the original named payee with various versions of the names of Blue Line Travel, Inc., Zaal, Inc., and other businesses which he controlled and for which he was an authorized signatory.

16. It was further part of the scheme and artifice that defendant FARZAD DARUI negotiated the altered checks and deposited funds stolen from the Center directly into either the Zaal checking account or into the Blue Line checking account.

17. In was further a part of the scheme and artifice that defendant FARZAD DARUI obtained checks payable to employees or contractors of the Center and, without authority from the named payee on the checks, negotiated and deposited the checks directly into either the Zaal checking account or into the Blue Line checking account.

18. Throughout the scheme, defendant FARZAD DARUI submitted duplicate invoices and checks to the Director who endorsed the duplicate checks without realizing the payment was a

-5-

duplicate check for an invoice that supposedly had been paid. Defendant FARZAD DARUI embezzled either the original endorsed check or the duplicate endorsed check in the aforementioned manner and sent the remaining endorsed check to the appropriate creditor or vendor thereby enabling defendant FARZAD DARUI to carry out and conceal his embezzlement of the Center's funds.

19. In approximately February 2002, the mailing information for the Islamic Center special account was changed from the Center to a United States Post Office box in Washington, D.C. This change of address was unknown and unauthorized by the Director.

20. It was further part of the scheme and artifice that to conceal the fact that defendant FARZAD DARUI was altering the Center's checks and depositing the proceeds of the checks into bank accounts he controlled, defendant FARZAD DARUI rented a United States Post Office box in Washington, D.C., in the name of the Islamic Center without the knowledge or consent of the Director or anyone else at the Center (hereinafter, "P.O. Box 53188").

21. It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, on the application for P.O. Box 53188, defendant FARZAD DARUI listed the address of the Islamic Center as that of his personal residence, that is, 3433 Malbrook Drive, Falls Church, Virginia.

22. It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, defendant FARZAD DARUI caused Bank of America to mail, via the United States Postal Service, monthly statements and processed checks for that account to P.O. Box 53188.

23. It was further part of the scheme and artifice that defendant FARZAD DARUI deposited the Center's checks directly into his Zaal checking account or into his Blue Line checking account.

During the course of the scheme from on or about October 2000 to on or about January 2006, defendant FARZAD DARUI stole in excess of $430,000 from the Center.

24. On or about each of the approximate dates listed below, in the District of Columbia and elsewhere, defendant FARZAD DARUI, for the purpose of executing the above-described scheme and artifice and attempting to do so, knowingly caused the following items to be delivered by mail by the United States Postal Service according to the directions thereon.

| Count | Approx. Date | Item | Mailed From | Mailed To |
|-------|--------------|------|-------------|-----------|
| 1 | 10-10-02 | Islamic Center special account monthly statement for the period 09-11-02 through 10-10-02 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 2 | 05-09-03 | Islamic Center special account monthly statement for the period 04-11-03 through 05-09-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 3 | 11-06-03 | Islamic Center special account monthly statement for the period 10-11-03 through 11-06-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 4 | 03-11-04 | Islamic Center special account monthly statement for the period 02-07-04 through 03-11-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

| 5 | 07-12-04 | Islamic Center special account monthly statement for the period 06-11-04 through 07-12-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

**(Mail Fraud and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1341 and 2)**

## COUNT SIX
## (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)

25. Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

26. From on or about October 2000, to in or about January 2006, in the District of Columbia, the defendant FARZAD DARUI, did willfully and knowingly transport, transmit and transfer, in interstate commerce, that is, between the District of Columbia and the Commonwealth of Virginia, a security of the value of $5,000 or more, that is, checks as enumerated below having a combined value of $8,716.48, well knowing the same to have been stolen:

| Count | Check Dated | Check # /Original Payee | Inserted Payee | Amount |
|-------|-------------|-------------------------|----------------|--------|
| 6 | 04/30/2003 | 78436 / Washington Gas | B.L.T. Services Inc. | $4,516.48 |
|   | 10/31/2003 | 78736 / Travelers | Blue Line Incorporated | $4,200.00 |

**(Interstate Transportation of Stolen Property and Causing an Act to be Done, in violation of 18 United States Code, Sections 2314 and 2)**

## COUNT SEVEN
### (THEFT IN THE FIRST DEGREE)

27.  Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

28.  From between in or about October 2000, until in or about January 2006, in a continuing course of conduct, in the District of Columbia, defendant FARZAD DARUI wrongfully obtained over $430,000 in monies from the Islamic Center of Washington, D.C., with the intent to appropriate the property to his own use or to the use of third persons.

**(Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211(b)(2) and 3212(a))**

### FORFEITURE ALLEGATION

1.      The violations alleged in Counts 1 through 5 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461.

2.      Upon conviction of one or more of the offenses alleged in Counts 1 through 5 of this Indictment, defendant FARZAD DARUI shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

MONEY JUDGMENT – $434,911.21, which represents a sum of money equal to an amount of proceeds obtained as a result of the defendant's mail fraud scheme, in violation of Title 18, United States Code, Section 1341.

By virtue of the offenses charged in Counts 1 through 5 of this Indictment, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) (as incorporated by Title 28, United States Code, Section 2461 (c)).

3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. Section 853(p) as incorporated by 28 U.S.C.

Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above.

> **(Criminal Forfeiture, pursuant to Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C) and Title 21, United States Code, Section 853), and Fed. R. Crim. P. 32.2)**

A TRUE BILL


FOREPERSON


ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

# EXHIBIT B

Misc. No. 1:07-mc-000387

# United States District Court

FOR THE _____ **DISTRICT OF** _____ COLUMBIA

UNITED STATES

**V.**

FARZAD DARUI

## SUBPOENA IN A CRIMINAL CASE

CASE NUMBER:

CRIM. NO. 1:07–CR–00149–RCL

TO:

DR. ABDULLAH M. KHOUJ
2551 MASSACHUSETTS AVE., NW
WASHINGTON, DC  20008

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| NOT APPLICABLE | N/A |
| | DATE AND TIME |

☐ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

SEE ATTACHMENT "A"

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| NANCY MAYER-WHITTINGTON | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Victoria Toensing, 1776 K St., NW
Ste. 737, Washington, DC  20006
(202) 289-7701

1. The agreement entered into on or about 2004 between Khouj and The Islamic Center with Farzad Darui and Zaal, Inc. and signed by Khouj, regarding services to be provided by Zaal;

2. All marriage certificates and/or licenses, and divorce certificates and/or decrees to which you applied and/or were a party between July 1, 1984 and December 31, 2006;

3. All requests to the Saudi Embassy and/or Saudi Government and written communication with the Saudi Embassy and/or Saudi Government regarding requests for marriage including, but not limited to, any "marriage" under Islamic Law, from July 1, 1984 through December 31, 2006;

4. All written contracts, agreements, and cash receipts to which Debbi Estrada was a party between January 1, 1990 and December 31, 2006;

5. All written contracts, agreements, and cash receipts to which Noufisa or Rachida Zouhri was a party between January 1, 1994 to present;

6. All personal IRS filings and returns for the tax years of 2002, 2003, 2004, 2005, and 2006;

7. All documents reflecting charitable contributions for tax years 2002 through 2006;

8. All personal bank statements and cancelled checks for all checking, savings, and investment accounts between January 1, 2000 and December 31, 2006;

9. Copies of all checks payable to Farzad Darui as referenced in the Federal Bureau of Investigation interview of Abdullah Khouj by Agent Brian Crews on January 16, 2007 ("Khouj gave Darui a check once a month for $600 to help [Debbi Estrada] with her rent.");

10. Records of all income received from Prince Bandar bin Sultan bin Abdulaziz Al-Saud, the Saudi Arabian Embassy, and/or the Saudi Arabian Government for the years 2000 through 2006;

11. Any document reflecting use of a Post Office Box between July 1, 1984 through December 31, 2006;

12. All Visa petitions, and residency applications filed on your own behalf between July 1, 1984 and December 31, 2006;

13. All W-8BEN filings and/or forms corresponding with any bank account to which you were a signatory from January 1, 2000 through December 31, 2006;

14. All cancelled checks made out to Farzad Darui, Blue Line Travel, Inc., Blue Line Travel, B.L.T., Zaal, Inc. and Zaal to which you were a signatory between January 1, 1992 and December 31, 2006.

   All requests for documents above include electronically stored information. These items must be returned to our office no later than the close of business on Friday, November 2, 2007.

   diGenova & Toensing
   1776 K St., NW, # 737
   Washington, DC 20006

# EXHIBIT C

## Misc. No. 1:07-mc-000387



**THE ISLAMIC CENTER**
T E L E P H O N E ~~332-7461~~

332-8343

2551 MASSACHUSETTS AVENUE N
WASHINGTON, D.C. 20008,   U. S.

المركز الاسلامي بواشنطـن

September 18, 1984

The Travelers Insurance Company
7617 Little River Turn Pike
Annandale, VA  22003

Attention:  Ms. Pam King

Dear Ms. King:

Please find enclosed a New Enrollment Form of one of our new employee , Dr. Abdullah M. Khoj.



Dr. Abdullah M. khoj is the Director of the Center.  The date of Employment was August 21, 1984.  He is married with 2 children.  Dr. Khoj was sent here by the Saudi Arabian Government, therefore, the social security number does not apply to his case.

We would like his policy to be effective in our Group starting September 1, 1984.  If there is any further question concerning this enrollment, please contact me at the above number from Monday – Friday  between 10 a.m. to 5:00 p.m.

Thank you very much for your assistance and consideration.

Sincerely yours,

Samira P. Osman
Administrative Secretary

c.c.  Mrs. Fay Vaziri, Agent

SOC-00094

# EXHIBIT D

Misc. No. l:07-mc-000387

The Washington Post

# A False Picture of Islam

I take exception to Jim Hoagland's "Sexual Politics, Islamic Style" [Feb. 13] on several grounds. Not only is the headline offensive and misleading, but it does not relate to the article itself.

Hoagland does not define what an "Islamic style" of sexual politics is. How can there be such a thing as an "Islamic style" when Islam is a way of life that God gave to all humankind? What sources does Hoagland use to examine this topic? If Hoagland wishes to discuss Islam, then he should limit himself to valid sources on Islam. If he wants to examine current trends in any Islamic society, he must distinguish between what is Islamic and what is cultural.

Contrary to Hoagland's claim, the veil is not a "sign of intimidation," nor is it a sign of misogynistic tendencies in Islam. Islam does not promote misogyny. Furthermore, Hoagland's apparent displeasure at no longer seeing "smartly dressed young Tunisian women" in the French-style sidewalk cafés shows his own ethnocentricity.

Moslem women have had full rights for more than 1,400 years. They own and control their own property, conduct their own businesses and participate in community affairs. They also have the right to inherit, to choose a marriage partner, to petition for divorce, to be educated and, for themselves and their children, to be supported and protected. Moslem women are spiritually equal to men. Although Western women have gained

some of these rights since the 19th century, they are still made to feel that they must be sexually attractive to get ahead and to become successful.

As devout Moslems, we have never argued whether women possess souls, nor have we ever viewed them as the source of evil in the world. Hoagland should not juxtapose the Judeo-Christian concept of original sin on the Islamic concept of women, which portrays women as honored and protected members of the society. The concept of original sin does not exist in Islam.

Hoagland states that while there is no prohibition, it has gradually become uncomfortable for "smartly dressed women" to frequent street cafés. He implies that this is because, in Arab cities, the streets belong to the men. This is not true. Female/male interaction in Islam is based on dignity, respect and honor, not on shame and fear. Hoagland is unclear as to how a discussion of women's role in society will "produce only losers." Open discussions on social issues are important in any society. Tunisians who are discussing these issues are not wasting their time and energy. Why does Hoagland believe that a moratorium on these issues is beneficial? Who benefits from this moratorium?

From what great fount did Hoagland gain the wisdom to determine—as Western society has done throughout history—that his way of thinking is the right way? Look at what Western society has gained: the disintegration of the family, homelessness, rising crime, teen-age

pregnancy, rampant drug and alcohol abuse, AIDS, suicide and contamination of the air, water and land. This is hardly a glowing vision of the perfect life. Perhaps Hoagland could learn a great deal from what Islam has to say about such problems.

In what way is adultery, as practiced in the West, superior to a legal married state of polygamy? Where did Hoagland get the information that adoption is prohibited in Islam? We have adoption, but it is not the Western style, which severs a child from his roots and heritage so that he will spend a lifetime wondering who he really is.

How do Hoagland and others conclude that the Moslem woman's dress does not protect and honor her? On what authority does Hoagland refute the high stature Islam gives to women? Did Hoagland study the original Islamic sources to determine what is the actual position of women in Islam? When examining another religion, one must go directly to the main sources of that faith, not only to those individuals claiming to be members of that faith. Unfortunately, some people who claim to be Moslems do not have the proper knowledge of Islam. This leads to many misunderstandings. I encourage anyone who is interested to come and find out what Islam really is.

—*Abdullah M. Khouj*

*The writer is director of The Islamic Center.*

SOC-00095

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Misc. No 1:07-mc-00387 (RCL) |
| | ) |
| **FARZAD DARUI,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

Upon consideration of the motion of Dr. Abdullah M. Khouj to quash the subpoena

served upon him on October 15, 2007, the opposition thereto, and the argument on the motion, it

is hereby

ORDERED this _____ day of October, 2007, that the motion of Dr. Abdullah  M. Khouj

is granted.

_____
Hon. Royce C. Lamberth
United States Judge

Copies to:

Richard M. Cooper, Esq.
Robert P. Watkins, Esq.
Ana C. Reyes, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
   Counsel for Dr. Abdullah M. Khouj

Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing, Esq.
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C.  20006

Ronald Wesley Sharpe, Esq.
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C.  20530

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA  20176
   Counsel for Defendant