UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                    )<br>)   Misc. Nos.<br>)              07-mc-387 (RCL)<br>FARZAD DARUI,                              )<br>)<br>         Defendant.                          )<br>_____) | |

## MEMORANDUM OPINION

On August 8, 2007, this Court issued an Order permitting defendant Darui to serve Rule 17(c) subpoenas *duces tecum* on certain specified individuals and entities. *See* August 8, 2007 Order. This matter comes before the Court on motions to quash from the Islamic Center of Washington, D.C. ("the Center"), and Abdullah Khouj ("Khouj"), the Center's Director. Upon consideration of the papers filed in connection with the motions to quash, oral arguments heard by the Court on these motions, and the record herein, for the reasons set forth below, the Center's motion shall be granted and Khouj's motion shall be granted in part and denied in part.

## I. BACKGROUND

Defendant Darui is charged in a seven-count indictment with five counts of mail fraud and causing an act to be done in violation of Title 18, United States Code, sections 1341 and 2, interstate transportation of stolen property and causing an act to be done in violation of Title 18 United States Code, sections 2314 and 2, and theft in the first degree in violation of Title 22, District of Columbia Code, sections 3211(b)(2) and 3212(a). *See* Indictment at 1. The indictment alleges that defendant knowingly engaged in a scheme to defraud the Center and to

obtain money and property belonging to the Center by means of false and fraudulent pretenses. *See* Indictment at 4, ¶ 11. Specifically, the government claims that defendant Darui wrote and issued, or caused to be written, issued, or signed, or falsely altered checks written on the Center's various bank accounts, which he used for his personal enrichment. *See id*. at 4, ¶ 12. Defendant Darui contends that the payments at issue reflect, inter alia, repayments by Khouj, for debts he owed Darui for housing and feeding Khouj's "wives." *See* Def.'s Opp'n to Center's Mot. at 7–8.

Defendant Darui now seeks documents and information from the Center and from Khouj that he believes will demonstrate the true reasons for the payments at issue in his case, and therefore, undermine the government's allegations. *See id*. at 1–2. Defendant argues that pre-trial production of the sought after documents is essential to his defense. The motions to quash assert that the subpoenas constitute an impermissible attempt to use Rule 17(c) as a discovery device.

## II. ANALYSIS

### A.    Legal Standard

Federal Rule of Criminal Procedure 17(c) provides, in relevant part:

(1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
(2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

FED. R. CRIM. P. 17(c). The Supreme Court has concluded that Rule 17(c) is "not intended to provide a means of discovery for criminal cases," but was meant to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States*

*v. Nixon*, 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *see United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) ("*Cuthbertson I*") ("Courts must be careful that 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Federal Rule of Criminal Procedure 16."); *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) (explaining that Rule 17(c) "is not a discovery device, [it] confines a subpoena *duces tecum* to admissible evidence, [and] authorizes the quashing of the subpoena if it is 'unreasonable or oppressive'") (footnotes omitted). As such, use of a Rule 17(c) subpoena is limited to documents or other materials that are admissible as evidence at trial. *See United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence."). Moreover, "naked exculpatory evidence held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule." *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("*Cuthbertson II*").

In *Nixon*, the Supreme Court set forth the criteria for a party seeking production under a 17(c) subpoena. 418 U.S. 683. The Court concluded that to compel production of documents, the party seeking production must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity. *Id.* at 700. A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified. *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (citing *Cuthbertson I*, 630 F.2d at 145 (concluding, in part, that the district court properly modified a Rule 17(c) subpoena); *United States v. North*, 708 F.Supp.

402, 404 (D.D.C. 1989) (holding that the government's Rule 17(c) subpoena had to be quashed because it failed to satisfy the relevance, admissibility, and specificity requirements)).

To determine whether the documents or information being sought satisfy *Nixon's* relevance requirement, courts must "assess whether the [materials] have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Libby*, 432 F. Supp. 2d at 31 (quoting FED. R. EVID. 401). If the documents are deemed relevant, the Court must then determine whether they would be admissible under the Federal Rules of Evidence, or otherwise. *See id.* (citing FED. R. EVID. 401–415, 801–807). Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial. *Nixon*, 418 U.S. at 701 (internal citation omitted). Pre-trial production may be appropriate, however, where there are other valid potential evidentiary uses for the same material. *See id.* at 701 (affirming the district court's issuance of a subpoena for materials that had other valid potential evidentiary uses and the analysis of which was likely to take a significant period of time). Finally, in addition to seeking documents that are both relevant and admissible, a Rule 17(c) subpoena must also be specific. *Libby*, 432 F. Supp. 2d at 31; *see also Cuthbertson I*, 630 F.2d at 144 ("[A] test for enforcement [of a Rule 17(c) subpoena] is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."). While exquisite specificity is not required, courts will not approve a subpeona for documents based upon requests for disclosure from broad categories of documents. *Libby*, 432 F. Supp. 2d at 31 (internal citations omitted).

B.  DISCUSSION

4

1.    *Pre-trial Access to Impeachment Evidence*

As discussed below, many of the documents sought in the subpoenas served on the Center and Khouj serve no purpose other than potential impeachment value. Defendant Darui asks this Court to order the Center and Khouj to produce these documents in advance of trial on the basis that these documents are "potentially admissible" and "form the basis for eliciting certain testimony at trial." *See* Def.'s Opp'n to Center's Mot. at 5; Def.'s Opp'n to Khouj's Mot. at 6. Defendant cites cases where district courts have enforced subpoenas seeking documents with potential witness impeachment value where the evidence related to individuals who were expected to testify and where there was a clear indication of what they would say. *See id.* (citing *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988); *United States v. King*, 194 F.R.D. 569, 574 (E.D. Va. 2000); *United States v. Liddy*, 354 F. Supp. 208, 215 (D.D.C. 1972) (granting pre-trial "access to material which contain prior statements of witness, statements that possibly might be admissible into evidence to discredit or impeach that witness"). Here, the government has listed Khouj as a witness it plans to call in its case-in-chief. Defendant suspects that the documents sought in the subpoena are potentially valuable toward the impeachment of Khouj's testimony.

In *Nixon*, the Supreme Court said: "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701 (internal citation omitted). This is because the admissibility prong of Rule 17(c) cannot be fully assessed until the corresponding witness testifies at trial. *LaRouche*, 841 F.2d at 1180 (citing *United States v. Liddy*, 478 F.2d 586, 587–88 (D.C. Cir. 1972) (separate opinion of Leventhal, J.)). Observation of this general rule against pre-trial access to impeachment evidence, however,

is left to the sound discretion of the district court. *See id.* (citing *Liddy*, 478 F.2d at 587–88 (stating that pre-trial production of impeachment testimony is subject to interest and discretion of trial court in preventing unfairness and trial delays) (separate opinion of Leventhal, J.). While some courts have allowed pre-trial access to impeachment evidence in order to alleviate potential delays at trial, that decision is discretionary. *See, e.g., LaRouche*, 841 F.2d at 1180 (finding no error with the district court's disclosure of impeachment evidence before trial pursuant to a Rule 17(c) subpoena because the "putative key witness, whose general testimony is already known is scheduled to testify"); *but see Cuthbertson II*, 651 F.2d at 195 (concluding that the district court erred in requiring disclosure of Rule 17(c) documents that contained potential impeachment evidence before the witness who made the statement testified at trial).

This Court has recognized that "impeachment evidence only ripens into admissible evidence after the witness has presented testimony at trial." *Libby*, 432 F. Supp. 2d at 37–38 (citing *Cuthbertson I*, 630 F.2d at 145–46). In *Libby*, this Court held that under *Nixon*, documents that are only admissible as impeachment evidence "only become admissible *after* [the witness's] direct testimony has been presented." *Id.* at 38 (emphasis in original). The *Libby* court refused to compel pre-trial production of impeachment evidence even where the witness was "a critical witness for the government," and "it [was] fairly clear what her testimony [would] likely be." *Id.*

Generally, courts assess compliance with the *Nixon* standard based solely on the content of the subpoena itself, coupled with the papers submitted by the parties in connection with a motion to quash or modify. *Libby*, 432 F. Supp. 2d at 32. In the instant matter, this Court, after consulting with the parties, ordered movant Khouj to produce four categories of documents in

advance of trial, and ordered the Center to produce seven categories of documents to the Court for *ex parte*, *in camera* review in order to determine whether the defendant has met the *Nixon* standard. As for the remaining materials at issue, this Court has determined based on the content of the subpoena itself, the parties' filings, and arguments made at the hearing, that defendant has failed to establish any potential use of the subpoenaed materials other than for purposes of impeachment. Further, defendant has not established that his is the extraordinary case that warrants this Court to exercise its discretion to order production of impeachment evidence in advance of trial. To be sure, as for many of the documents at issue, defendant's only argument as to why he is entitled to pre-trial production—aside from possible impeachment value—is that counsel for the Center and Khouj previously agreed to produce them. Further, while defendant claims that the subpoenaed materials are "essential to his defense," his defense is not viable and cannot form the basis for a Rule 17(c) subpoena if defendant fails to produce evidence "to convince this court that this defense is not created out of thin air." *United States v. Rezaq*, 156 F.R.D. 514, 529 (D.D.C. 1994) (Lamberth, J.), *vacated in part on other grounds*, 899 F.Supp. 697 (D.D.C. 1995) (Lamberth, J.). For these reasons, this Court will not enforce the subpoenas insofar as they demand production of potential impeachment evidence.

    2.    *The Islamic Center's Subpoena*

The subpoena served on the Center seeks nineteen categories of documents. *See* Center's Mot., Attach. B. The defendant seeks documents which are responsive to the following requests:[1]

---

[1] For the sake of brevity, the Court will group similar categories from the subpoena together and address each grouping in turn.

Requests 1–2: The subpoena seeks the names of all persons employed by the Center from January 1, 1990 through December 31, 2006, along with their pay stubs, time cards, W-4 forms, employee files, and records of payments of tax withholdings. *See* Center's Mot., Attach. B., ¶¶ 1–2.

Requests 3–4: The subpoena seeks all newsletters and bulletins from the Center from January 1, 1990 through December 31, 2003, along with all printing receipts, payment records, and typesetting receipts for such newsletters. *See* Center's Mot., Attach. B., ¶¶ 3–4.

Requests 5–8: The subpoena seeks all editions of by-laws of the Center in effect from January 1, 1984 through December 31, 2006, lists of all current and previous board members of the Center from January 1, 2000 through August 17, 2007, and all documents referencing the Board or its members from January 1, 1984 through August 31, 2007. *See* Center's Mot., Attach. B., ¶¶ 5–8.

Requests 9–10: Here, the subpoena requests all agendas, minutes, notes, transcripts, certified minutes, and audio and video recordings of all Board meetings, including emergency Board meetings from January 1, 1984 through December 31, 2006. *See* Center's Mot., Attach. B., ¶¶ 9–10.

Requests 11–13: The subpoena requests minutes or any other record reflecting the hiring of Williams & Connolly, LLP to represent the Center in the civil action against defendant Darui, names of all persons attending any meeting to decide the hiring of Williams & Connolly, and all documents relating to the retention, billing records, and payment of the firm. *See* Center's Mot., Attach. B., ¶¶ 11–13.

Requests 14–16: These requests seek all documents relating to agreements the Center has

with contractors and other service providers, all monthly and year-end expense statements from January 1, 1990 through the present, and all accounting and financial audits performed between January 1, 2000 and December 1, 2006. *See* Center's Mot., Attach. B., ¶¶ 14–16.

Request 17: This request seeks all records of charitable donations made from the Center's accounts disbursed between January 1, 2000 and December 31, 2006. *See* Center's Mot., Attach. B., ¶ 17.

Request 18: Here, the subpoena seeks all records of all distributions, including cash distributions, made to charities, employees, independent contractors, and other individuals between January 1, 2000 and December 31, 2006. *See* Center's Mot., Attach. B., ¶ 18.

Request 19: The final request seeks all documents reflecting the payment of Washington, D.C. sales tax from the Center's bookstore from January 1, 2000 through the present. *See* Center's Mot., Attach. B., ¶ 19.

In general, the Center argues that defendant's requests fail to satisfy the *Nixon* requirements for a 17(c) subpoena. According to the Center, the documents sought lack relevance to the charges in the indictment and are inadmissible at trial. The Center further argues that the subpoena's failure to identify specific documents for production constitutes an impermissible attempt to use Rule 17(c) as a discovery device. *See* Center's Mot. at 3. Defendant Darui counters that each category of documents will directly support his claims and are sufficiently specific given defendant's twenty-year relationship with the Center and with Khouj. *See* Def.'s Opp'n to Center's Mot. at 7–8.

In an order issued December 5, 2007, this Court ordered the Center to produce for *ex*

9

*parte, in camera* review documents responsive to requests 1, 2, 3, 4, 14, 15, and 16.[2] The Court has since reviewed these documents and evaluated them according to the *Nixon* three-part standard. The Court will discuss each of these categories of documents, as well as those that were not ordered for production below.

The Court will first address the documents that were produced for *ex parte, in camera* review. As for requests 1 and 2, the Center maintains that the information sought in these requests is irrelevant and inadmissible since the indictment raises no charge that other persons employed at the Center were involved in the alleged fraud or that defendant Darui mishandled employees' records. Defendant points to a section of the indictment that alleges he "obtained checks payable to employees or contractors of the Center and, without authority . . . , negotiated and deposited the checks" as part of his scheme. *See* Def.'s Opp'n to Center's Mot. at 9 (citing Indictment, ¶ 17). One of defendant Darui's defenses is that the checks at issue were used to pay "informants who assisted the Center by keeping tabs on radical Islamist groups" and were never intended for the Center's employees. *See id.* at 9. Defendant argues that the materials sought in categories 1 and 2 of the subpoena will support his defense by showing that the Center's actual employees received all payments to which they were entitled. *See id.*

This Court has reviewed the personnel documents and finds that the relevance of these materials is suspect. The materials show which persons were employed by the Center and how much each person was paid, but nothing in these documents shows whether defendant obtained additional checks as part of the alleged scheme. The fact that the Center made proper payments

---

[2] The Court's December 5, 2007 order modified the date ranges for any responsive documents to reflect the date range of the alleged fraud as charged in the indictment.

10

to its employees does not show that improper payments were never made to other persons. Further, even if the personnel information cleared the first *Nixon* hurdle, this Court must conclude that requests 1 and 2 fail to satisfy *Nixon's* specificity requirement. Here, as in *Libby*, the defendant seeks a wide array of documents from a variety of individuals, many of whom it is unknown whether they will even be witnesses in this case. *Libby*, 432 F. Supp. 2d at 39. Accordingly, documents responsive to these requests need not be produced.

  Moving to requests 3 and 4, the Center argues that the documents sought are neither relevant nor admissible since the government has made no allegation that defendant mishandled the Center's newsletter or bulletin or any payments associated with those publications. *See* Center's Mot. at 7. Defendant contends that by matching up the payment records with the newsletters he will show that Khouj was untruthful when he told the government that regular payments made to Debbi Estrada were for her work on the Center's newsletter. Def.'s Opp'n to Center's Mot. at 10. According to defendant, Estrada never performed such work for the Center and the payments were actually "another ruse by Khouj to support his 'wives.'" *Id*. Having reviewed the newsletters, bulletins, and corresponding payment records, this Court must conclude that these documents are only relevant to defendant's wholly unsubstantiated defense that the funds he is accused of embezzling were, instead, repayments for his financial assistance in supporting Khouj's wives. Documents relevant only to this unsupported defense fail to satisfy *Nixon's* relevancy requirement. Further, to the extent that these materials provide potential impeachment value during trial, they are not admissible until a witness actually testifies. As such, this Court shall not require production of documents responsive to requests 3 and 4 in advance of trial. Accordingly, the Court will retain these documents. At the conclusion of

Khouj's direct examination, the defendant may, if he chooses, request that the Court produce these documents for impeachment purposes.

Finally, as for requests 14 through 16, the Center argues that the time and scope of these requests undermine *Nixon's* specificity requirement. *See* Center's Mot. at 5. The Center further argues that the documents responsive to these requests are irrelevant to the charges in the indictment. *See* Center's Reply Mem. at 5. This Court has reviewed the Center's financial documents responsive to requests 14 through 16 *in camera*. Based on that review, this Court reaches the same conclusion as it does regarding requests 1 and 2: Payments made to outsiders for goods or services provided to the Center do not show that improper payments were made or that defendant is not responsible for the scheme alleged in the indictment. Unless and until these materials become necessary to impeach government witnesses at trial, these materials are irrelevant to the indictment and this Court sees no basis to order their production in advance of trial. As with documents responsive to requests 3 and 4, the Court will retain these materials until such time that they become admissible as impeachment evidence at trial.

The Court will now address the remaining documents in the subpoena that were not reviewed *in camera*. In requests 5 through 8, defendant seeks materials related to the Center's by-laws and its Board Members including, among other things, information about their qualifications, nominations, and removal. Defendant Darui claims that these materials are necessary in advance of trial to demonstrate who was authorized at various times to approve disbursements for the Center. *See* Def.'s Opp'n to Center's Mot. at 10. Defendant fails, however, to show how this information is relevant to the charges in the indictment. Further, since defendant Darui has made no assertion that any of the disbursements at issue in his indictment

12

were approved by the Center's Board Members, the materials sought by defendant are simply irrelevant. Documents containing the names of persons authorized to approve disbursements do not show that defendant Darui did not engage in fraud.

As for requests 9 through 13 and 19, defendant Darui makes no showing that these requests meet any of the three *Nixon* criteria. To be sure, defendant's only claim as to why this Court should enforce the subpoena as to these requests is that the Center's counsel previously agreed to produce them. *See* Def.'s Opp'n to Center's Mot. at 8–9, 10. According to defendant, counsel's previous willingness to produce selected portions of these materials shows that counsel "presumably recogniz[ed] their relevance to the case." *Id*. at 10 (discussing requests 9 through 11). This Court disagrees. Without a showing by defendant that the materials sought in these requests are relevant, admissible, and specific, this Court has no basis to order their production. Defendant's argument that counsel previously agreed to produce the materials in no way convinces this Court that any of the three *Nixon* requirements have been satisfied.

The Court reaches the same conclusion regarding requests 17 and 18 as it did with requests 14 through 16. Payments made by the Center to outsiders, including charitable donations, do not show that improper payments were made or that defendant did not engage in fraud. Unless and until these materials become necessary to impeach government witnesses at trial, the materials sought in requests 17 and 18 are irrelevant to the indictment and this Court sees no basis to order their production in advance of trial.

    3.    *Abdullah Khouj's Subpoena*

The subpoena served on the Center seeks fourteen categories of documents. *See* Khouj's Mot., Attach. B. The defendant seeks documents which are responsive to the following requests:

13

Request 1: The subpoena seeks an agreement between Khouj and the Center, and defendant Darui and Zaal, Inc. (a company owned by Darui), regarding services to be provided by Zaal. *See* Khouj's Mot., Attach. B., ¶ 1.

Request 2–3: These requests seek all marriage and divorce certificates to which Khouj was a party and all requests to the Saudi Arabian government for marriage, including marriage under Islamic law, between July 1, 1984 and December 31, 2006. *See* Khouj's Mot., Attach. B., ¶¶ 2–3.

Requests 4–5: Here, the subpoena seeks all written contracts, agreements, and cash receipts to which Debbi Estrada was a party between January 1, 1990 and December 31, 2006, and to which Noufisa or Rachida Zouhri was a party between January 1, 1994 and the present. *See* Khouj's Mot., Attach. B., ¶¶ 4–5.

Requests 6–7: These requests seek all personal IRS filings and returns and all documents reflecting charitable contributions for tax years 2002 through 2006. *See* Khouj's Mot., Attach. B., ¶¶ 6–7.

Request 8: This request seeks all personal bank statements and cancelled checks for all checking, savings, and investment accounts between January 1, 2000 and December 31, 2006. *See* Khouj's Mot., Attach. B., ¶ 8.

Request 9: Here, the subpoena seeks copies of all checks payable to defendant Darui as referenced in the FBI interview of Khouj by Agent Brian Crews on January 16, 2007. The supboena quotes a statement that reads as follows: "Khouj gave Darui a check once a month for $600 to help [Debbi Estrada] with her rent." *See* Khouj's Mot., Attach. B., ¶ 9.

Request 10: This request seeks records of all income received from Prince Bandar bin

Sultan bin Abdulaziz Al-Saud, the Saudi Arabian Embassy, and/or the Saudi Arabian government for the years 2000 through 2006. *See* Khouj's Mot., Attach. B., ¶ 10.

Request 11: This request seeks any document reflecting use of a Post Office Box between July 1, 1984 through December 31, 2006. *See* Khouj's Mot., Attach. B., ¶ 11.

Request 12: The subpoena seeks all Visa petitions and residency applications filed on Khouj's behalf between July 1, 1984 and December 31, 2006. *See* Khouj's Mot., Attach. B., ¶ 12.

Request 13: This request seeks all W-8BEN filings and/or forms corresponding with any bank account to which Khouj was a signatory from January 1, 2000 through December 31, 2006. *See* Khouj's Mot., Attach. B., ¶ 13.

Request 14: This final request seeks all cancelled checks made out to defendant Darui, Blue Line Travel, Inc., Blue Line Travel, B.L.T., Zaal, Inc. and Zaal to which Khouj was a signatory between January 1, 1992 and December 31, 2006. *See* Khouj's Mot., Attach. B., ¶ 14.

Movant Khouj argues that the subpoena is unreasonable and oppressive becuase its demands are irrelevant to a viable defense, inadmissible at trial, and impermissibly broad. *See* Khouj's Mot. at 4. Defendant Darui contends that the requested information "will demonstrate conclusively that [his] principle accuser was untruthful under oath, and that Khouj (and his need, among other things, to support his 'wives') approved the payments from his personal account to Darui." *See* Def.'s Opp'n to Khouj's Mot. at 1.

Based on the face of the subpoena, the parties filings, and arguments made during the motions hearing, this Court found that the materials sought in requests 1, 11, 13, and 14 were clearly relevant to the charges in the indictment, were likely admissible at trial, and were sufficiently specific under *Nixon*. As such, on December 5, 2007, this Court ordered Khouj to

produce for defendant's review documents responsive to requests 1, 11, 13, and 14.[3] The Court shall quash the subpoena as to the remaining requests for reasons set forth below.

Requests 2, 3, 4, 5, and 9 all relate to information regarding Khouj's relationship with and payments to his alleged wives. According to defendant Darui, the documents sought by these requests will show that the payments at issue in his indictment "were, in fact, paid out of Khouj's personal account for the maintenance and support of his various 'wives.'" Def.'s Opp'n to Khouj's Mot. at 9. Defendant, however, has failed to demonstrate that his unsubstantiated accusations against Khouj constitute a viable defense. Therefore, any materials responsive to requests 2, 3, 4, 5, and 9 fail *Nixon's* relevancy requirement. Further, to the extent that the materials responsive to these requests are potentially admissible for impeachment purposes during trial, these materials will not ripen into admissible evidence until after a witness testifies at trial. As such, this Court does not find that pre-trial disclosure of documents responsive to these requests is warranted.

Requests 6, 7, 8, and 10 seek financial information from Khouj that, according to defendant, will demonstrate that the money that defendant is accused of embezzling belonged to Khouj rather than the Center. *See id.* at 9. Defendant further claims that the financial information will demonstrate "whether Khouj received additional monies from the Saudis or some other source that he also used to support his 'wives.'" *Id.* at 10. Finally, defendant claims that this information will show "whether Khouj paid taxes on this money as personal income." *Id.* The Court finds that requests 6, 7, 8, and 10 are impermissibly overbroad and therefore fail to satisfy *Nixon's* specificity requirement. Rather than identifying specific financial documents,

---

[3] As with the Order issued to the Center, the Court modified the date ranges for any responsive documents to reflect the date range of the alleged fraud as charged in the indictment.

defendant Darui demands, among other things, "[a]ll personal IRS filings returns" for a five-year period (Khouj's Mot., Attach. B., ¶ 6), "[a]ll documents reflecting charitable contributions" for a five-year period (*id.* at ¶ 7), and "[a]ll personal bank statements and cancelled checks" for all of Khouj's bank accounts covering a seven-year period (*id.* at ¶ 8). This Court shall not allow defendant to "examine general categories of documents with the hope that they contain information that may be helpful to his defense." *Libby*, 432 F. Supp. 2d at 35. If during trial, Khouj's financial documents become admissible to impeach his testimony, defendant may, if he chooses, request that narrow categories of documents be produced at such time. Until then, the documents responsive to requests 6, 7, 8, and 10 need not be produced.

For similar reasons, this Court will not require Khouj to produce documents responsive to request 12. That request relates to Khouj's Visa petitions and residency applications filed over a period of more than twenty-one years. The only basis offered by defendant as to why these documents ought to be produced under Rule 17(c)—other than that the request "should be easy for Khouj to respond to," (Def.'s Opp'n to Khouj's Mot. at 9)—sounds in impeachment. *See* Def.'s Opp'n to Khouj's Mot. at 11 (indicating that request 12 will demonstrate that "Khouj's statements in his affidavit (regarding the same matters at issue in this case) were perjurious and knowingly untruthful"). This Court finds that the breadth and scope of request 12 suggest that defendant is using Rule 17(c) as a fishing expedition to see what may turn up. This is not the proper role Rule 17(c) subpoenas are intended to play in the criminal arena. *Libby*, 432 F. Supp. 2d at 35. Rather, they may be used solely to secure specifically identified evidence for trial that is relevant and admissible. *Id.* As such, defendant's request 12 fails *Nixon's* specificity requirement and therefore any documents responsive to this request need not be produced.

Defendant may request specific documents admissible to impeach Khouj after he provides testimony on these matters at trial.

### III. CONCLUSION

For the reasons discussed herein, this Court will grant the Center's motion to quash. Movant Khouj's motion shall be granted in part and denied in part. All documents that have already been produced *in camera* to the Court shall be retained until such time, if ever, that they became admissible as impeachment evidence.

A separate Order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on December 18, 2007.